# RICKY KING v. COMMONWEALTH OF VIRGINIA

August 31, 1978.

Record No. 771273.

Present: All the Justices.

*David E. Melesco (Melesco & McLaughlin, P.C.* on brief) for plaintiff in error.

*Jerry P. Slonaker, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief) for defendant in error.

PER CURIAM.

Ricky King has appealed his conviction by a jury of three separate charges of selling marijuana in violation of Virginia Code § 18.2-248. His punishment was fixed at confinement in the penitentiary for a period of six years in each case, and the trial court entered judgments accordingly. The dispositive issue involved on appeal is the refusal of the trial court to instruct the jury that it could find the defendant guilty of an accommodation distribution.

The testimony showed that the defendant sold marijuana to Peter T. Moorman, an undercover agent employed by the Sheriff of Franklin County, on three separate occasions - December 20, 1976, December 21, 1976, and January 27, 1977. Moorman said that on December 20, 1976, after having known King for only one day, he asked defendant if he had any marijuana for sale; that the defendant responded that he was "very short at the time"; that Moorman observed several marijuana cigarettes on a coffee table, and some loose marijuana in a tray beside them; and that he asked defendant if they could smoke one of the cigarettes, to which King agreed. Moorman mentioned several "references" (local people involved in the drug culture), and again asked King if he could "fix [him] up with some marijuana". Moorman said that defendant then walked to the back of his trailer and returned with a brown paper bag from which he removed at least four small plastic bags which the defendant represented as "quarter pound bags of marijuana", and as "Columbian grass", which sold for $125 a quarter pound. Moorman said he replied that he was not prepared to purchase that much but wanted to buy one ounce which King priced to him at $35. Moorman testified that he paid defendant $35 and that King "scooped out some of the leafy material [and] put it into a smaller plastic bag, most commonly referred to as a baggie". Moorman

then left the premises of defendant after advising him that he would return the next day to buy "a quarter pound of Columbian grass".

On December 21, 1976, Moorman returned to defendant's trailer to make his quarter pound purchase of marijuana. Moorman said that after inquiring if he wanted to sample his purchase the defendant rolled a couple of cigarettes which they smoked. Defendant then gave Moorman a quarter pound of what he described as Columbian grass and was paid $125 by Moorman.

Moorman stated that on January 27, 1977, he again made a prearranged visit to defendant's trailer, at which time he purchased a quarter pound of what the defendant described to the officer as "Moroccan grass marijuana", for $115. The officer testified that the defendant had a pair of scales, which looked like chemistry type scales, and used it to weigh the marijuana which he sold. Moorman said he noticed that when he handed defendant six $20 bills for the purchase, defendant reached into his pocket and pulled out a lot of money, and thumbed through some $10's and $20's before handing Moorman his $5 in change.

The defendant and his witnesses admitted that Moorman was at King's trailer residence on December 21, 1976, and January 27, 1977. Defendant denied meeting Moorman on December 20, 1976. The testimony of defendant was to the effect that no sales or distribution of marijuana were made by King to Moorman. The jury found otherwise, and there was credible testimony to support its findings.

 We have only to consider whether the trial court erred in refusing to grant the defendant an "accommodation instruction". Virginia Code §18.2-248 provides, in pertinent part, as follows:

"[I]t shall be unlawful for any person to manufacture, sell, give, distribute or possess with intent to manufacture, sell, give or distribute a controlled substance.

"(a) Any person who violates this section with respect to a controlled substance classified in Schedule I or II shall upon conviction be imprisoned for not less than five nor more than forty years and fined not more than twenty-five thousand dollars; . . . and provided further, that if such person prove that

he gave, distributed or possessed with intent to give or distribute marijuana or a controlled substance classified in Schedule III only as an accommodation to another individual and not with intent to profit thereby nor to induce the recipient or intended recipient of the controlled substance to use or become addicted to or dependent upon such controlled substance, he shall be guilty of a Class I misdemeanor."

It suffices to say here that the record is completely devoid of any credible evidence that the three sales made by King to Moorman were intended or believed by King to have been anything other than commercial sales of marijuana, a controlled substance, by a seller to a buyer. The sales were made for money, and there is nothing to suggest that they were made to "accommodate" the police officer. Moorman was virtually a stranger to King, and the defendant could have had only one motive in making the sales to Moorman, and that was to profit thereby. The expression "profit" is used in the statute to indicate a commercial transaction in which there is a consideration involved. It does not necessarily mean that a seller of drugs has to sell his drugs to a buyer at a price in excess of the amount the seller paid for the drugs.

The contention made by the defendant that Virginia Code § 18.2-248 unconstitutionally places an affirmative burden of proof upon a defendant to prove an element of the offense for which he was convicted was not asserted in the trial court and is not addressed by us. *Rice v. Commonwealth*, 212 Va. 778, 188 S.E.2d 196 (1972). Further, this question has been today decided by the Court adversely to the position of the defendant. *See Stillwell et al. v. Commonwealth* 219 Va. 214, 247 S.E.2d 360 (1978) .

We find no merit in defendant's assignment of error which questions the propriety of the closing argument made by the Commonwealth's Attorney.

The judgments of the lower court are

*Affirmed.*