COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Russell, Ortiz and Raphael
Argued at Richmond, Virginia


TIMOTHY LAMONT JOHNSON

                                                  MEMORANDUM OPINION* BY
v.        Record No. 0704-21-2                    JUDGE WESLEY G. RUSSELL, JR.
                                                         MAY 17, 2022

COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Margaret P. Spencer, Judge Designate

          Daniel W. Hall (Law Office of Daniel W. Hall, on brief), for
          appellant.

          Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
          Attorney General, on brief), for appellee.


        Timothy Lamont Johnson appeals his conviction in a bench trial of possession with intent to

distribute more than five pounds of marijuana in violation of Code § 18.2-248.1.  Johnson does not

challenge that he possessed the marijuana, but contends that the evidence failed to prove he

intended to distribute it.  Johnson also asserts that the trial court erred in rejecting his argument that

he should receive a reduced sentence because any distribution was as an accommodation.  Finding

no reversible error, we affirm.

                                        BACKGROUND

        "On appeal, we review the evidence in the 'light most favorable' to the Commonwealth,

the prevailing party in the trial court."  *Yerling v. Commonwealth*, 71 Va. App. 527, 530 (2020)

(quoting *Vasquez v. Commonwealth*, 291 Va. 232, 236 (2016)).  This standard requires us to

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

"discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." *Bagley v. Commonwealth*, 73 Va. App. 1, 26 (2021) (alteration in original) (quoting *Cooper v. Commonwealth*, 54 Va. App. 558, 562 (2009)).

In the spring of 2017, United States Postal Inspector Dalton learned of "a network of parcels [being sent] from California" to "about 15 addresses in the Richmond area." In April 2017, Dalton intercepted a package mailed to 1709 North 23rd Street in Richmond and found contraband. On July 12, 2017, Dalton targeted two "large brown boxes" addressed to two separate addresses in Richmond, namely the 23rd Street address and 1322 Coalter Street. Dalton photographed both boxes and notified Blaine Davis of the Multijurisdictional Interdiction Task Force in Chesterfield, Virginia. The packages then went out for "normal delivery[.]"

Davis gathered a team to conduct surveillance at both addresses during the package deliveries. Johnson arrived at the 23rd Street address in a silver car, and the U.S. Postal Service delivered one of the boxes to that location a short time later. Johnson retrieved the box from the porch, put it in the trunk of the car, and then drove directly to the apartment on Coalter Street. While Johnson was en route, the second parcel was delivered to the Coalter Street address. When Johnson arrived, a second individual exited the apartment with the parcel and placed it in the trunk of Johnson's car. Johnson and the second individual then left the area in the car. Law enforcement officers followed them to an apartment complex on West Broad Street in Richmond. The two men retrieved the packages from the trunk and entered the building. After about fifteen minutes, the two men exited the building with a woman but without the packages. They drove for about ten to fifteen minutes, let the woman out of the car, and then returned to the Broad Street location. Less than forty minutes later, Johnson and the second individual exited the apartment with the packages. Johnson tossed one of the boxes into a nearby trash receptacle, while the second individual put his

box in the trunk of the car.  At that point, Davis and his team approached the two men and detained them.

Davis and his team later obtained and executed a search warrant authorizing the search of the Broad Street apartment and the silver car.  Chesterfield County Police Detective T. Kline collected the evidence.  In the bedroom, Kline collected a .223 caliber semi-automatic rifle, forty-five rounds of ammunition, loaded magazines containing fifty-six rounds of .223 ammunition, and a gold can containing marijuana in a vacuum-sealed bag.  In the kitchen, Kline found a digital scale, a glass jar containing marijuana, a vacuum sealer, and a grinder.  Paperwork with Johnson's name on it was located in various places throughout the apartment and in the car.  Six sealed gold cans containing marijuana were also found in Johnson's trunk in a cardboard box, along with shipping labels and five additional bags of marijuana.

Richmond Police Officer Philips testified as an expert in the area of street level drug distribution.  He opined that the nearly ten pounds of marijuana recovered from Johnson's apartment and car were inconsistent with personal use.  He explained that an average marijuana user "might smoke a gram a day" and a heavy user might smoke up to three and a half grams a day.  He calculated that it would take Johnson "almost three-and-a-half years" to smoke the amount of marijuana he had in his possession.  When asked if Johnson might have purchased the marijuana "wholesale" for personal use, Philips responded, "it[s] not possible . . . it is not even close to personal use."  Philips also considered the presence of the firearm in the residence, because it "is common for drug traffickers to have a firearm to protect themselves and their proceeds," and he found the "vacuum sealing [bags] and vacuum sealer" significant because "larger marijuana dealers" often seal the marijuana to keep it fresh and to "keep[] the potency strong."  Finally, Philips explained that it is "common for drug dealers to have a digital scale on hand so that they can weigh

their drugs" when they are "prepacking for distribution to determine the right weight for their customers." The fact that no money or baggies were found did not alter Philips' opinion.

After a motion to strike and closing arguments, the trial court found Johnson guilty of possession with intent to distribute more than five pounds of marijuana. At his sentencing hearing, Johnson asked the trial court to find him guilty of possession with intent to distribute as an accommodation. In support of his motion, Johnson proffered that there was no evidence a sale took place or "even a distribution of marijuana." He emphasized that no currency was found on him, in his vehicle, or in his house; there also was no evidence of "buy sheets," text messages, or phone records memorializing marijuana sales. For these reasons, Johnson asked the trial court to find that there was no evidence of a "commercial transaction" or sale for profit. The trial court rejected Johnson's accommodation argument.

This appeal followed.

ANALYSIS

I. Standard of review

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez*, 291 Va. at 248 (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions

reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

We owe similar deference to the trial court's resolution of all questions of fact. *Goodwin v. Commonwealth*, 71 Va. App. 125, 136 (2019) (noting an appellate court is bound by the trial court's findings of fact unless the findings are plainly wrong or have no support in the evidence). Johnson's "claim of accommodation, at most, raise[s] an issue of fact to be resolved by the fact finder." *Foster v. Commonwealth*, 38 Va. App. 549, 557 (2002).

## II. Sufficiency of the evidence

Johnson challenges the sufficiency of the evidence to convict him of possessing the marijuana with the intent to distribute it. Conceding he possessed the marijuana police recovered, he asserts that the evidence did not exclude the reasonable hypothesis of innocence that he possessed the marijuana for personal use. We disagree.

"Absent a direct admission by the defendant, intent to distribute must necessarily be proved by circumstantial evidence." *Cole v. Commonwealth*, 294 Va. 342, 361 (2017) (quoting *Williams*, 278 Va. at 194).

> Circumstantial evidence that may be probative of an intent to distribute a controlled substance includes: "the quantity of the drugs seized, the manner in which they are packaged, and the presence of an unusual amount of cash, equipment related to drug distribution, or firearms," and whether the quantity of drugs was "inconsistent with personal use."

*Id.* (quoting *McCain v. Commonwealth*, 261 Va. 483, 493 (2001)). "Possession of a controlled substance in 'a quantity greater than that ordinarily possessed for one's personal use may be sufficient to establish an intent to distribute it.'" *Hargrove v. Commonwealth*, 53 Va. App. 545, 558 (2009) (quoting *Williams v. Commonwealth*, 52 Va. App. 194, 202 (2008), *aff'd*, 278 Va. 190 (2009)). "A trial court may also consider 'expert testimony, usually that of a police officer, . . . in

determining whether drugs were possessed with intent to distribute.'" *Id.* (alteration in original) (quoting *Askew v. Commonwealth*, 40 Va. App. 104, 110 (2003)).

Considered in the light most favorable to the Commonwealth, the evidence in this case sufficiently established Johnson's intent to distribute the marijuana. Johnson possessed nearly ten pounds of marijuana. Expert testimony established that it would take Johnson "almost three-and-a-half years" to smoke the amount of marijuana he had in his possession, and when asked if Johnson simply might have purchased the marijuana "wholesale" for personal use, Philips responded, "it[s] not possible . . . it is not even close to personal use." Given that "[q]uantity, alone, may be sufficient to establish" intent to distribute "if it is greater than the supply ordinarily possessed for one's personal use," *Cole*, 294 Va. at 361-62, the amount of marijuana, in and of itself, was sufficient to establish Johnson's intent to distribute it. Nevertheless, the record contains additional indices of Johnson's intent to distribute. He also possessed a semi-automatic rifle, ammunition, a digital scale, a vacuum sealer, and a grinder. Philips' expert testimony established that such items are probative of the intent to distribute. In addition, the absence of any personal smoking device or other "paraphernalia suggestive of personal use . . . [is] regularly recognized as [a] factor[ ] indicating an intent to distribute." *Askew*, 40 Va. App. at 108 (alterations in original) (quoting *Welshman v. Commonwealth*, 28 Va. App. 20, 37 (1998) (*en banc*)). Thus, the totality of the evidence supports the trial court's finding that Johnson intended to distribute the large quantity of marijuana he possessed.

Johnson's suggestion that the evidence did not exclude the theory that he possessed the marijuana for "alternative consumption methods" like "alcohol tinctures" or edible brownies is unavailing. Although Johnson's counsel raised the possibility of alternative such uses of marijuana during his cross-examination of Philips, little was offered to substantiate even the possibility of such uses here. No evidence of brownie baking or creating alcohol tinctures was introduced. No

evidence suggested that Johnson even possessed the equipment or other ingredients needed to make the hypothetical brownies or alcohol tinctures. "It is axiomatic that 'the Commonwealth need only exclude reasonable hypotheses that flow from the evidence.'" *Holloway v. Commonwealth*, 57 Va. App. 658, 668 (2011) (*en banc*) (quoting *Hamilton v. Commonwealth*, 16 Va. App. 751, 755 (1993)). "It is not our task to engage in a game of 'what if,' or to attempt to create theories that the evidence does not support. This Court should 'not base its holdings on "what ifs."'" *Id.* at 669 (quoting *Newman v. State*, 845 A.2d 71, 99 (Md. Ct. Spec. App. 2002), *rev'd on other grounds*, 863 A.2d 321 (Md. 2004)). "Were we to do so there is no limit to the theories that may arise from an inventive mind's eye[.]" *Id.* Other than the mere existence of the marijuana and counsel's questions, nothing even potentially supports the theory of possession for personal use by means of alternative consumption methods. Accordingly, the trial court reasonably rejected such a claim.

In this case, the evidence was sufficient to prove beyond a reasonable doubt that Johnson possessed the marijuana with the intent to distribute it. Thus, we will not disturb the trial court's ruling on appeal.

## III. Accommodation

Johnson also contends that the trial court erred in rejecting his argument that he engaged in the distribution of marijuana as an accommodation. He argues that the "deficiencies in proof of intent to distribute for profit," such as a lack of packaging, money, ledgers, or the conduct of sales, proved only that he possessed the marijuana to share it, "and not as part of a commercial operation." We disagree.

"[I]t is unlawful for any person to sell, give, distribute or possess with intent to sell, give, or distribute marijuana." Code § 18.2-248.1. However, "[i]f such person proves that he gave, distributed, or possessed with intent to give or distribute marijuana only as an accommodation to another individual and not with intent to profit thereby from any consideration received or expected

- 7 -

. . . he is guilty of a Class 1 misdemeanor." Code § 18.2-248.1(a). An accommodation defense

"provides for mitigation of punishment where one convicted of possession with intent to distribute

is found not to be a dealer in drugs, but one 'motivated by a desire to accommodate a friend without

any intent to profit or to induce or to encourage the use of drugs.'" *Barlow v. Commonwealth*, 26

Va. App. 421, 430 (1998) (quoting *Stillwell v. Commonwealth*, 219 Va. 214, 219-20 (1978)). "An

accommodation defense is a defense that pertains only to the *penalty* imposed on one found guilty

of drug distribution." *Porter v. Commonwealth*, 66 Va. App. 302, 308-09 (2016) (emphasis added)

(quoting *Foster*, 38 Va. App. at 555). "The Supreme Court has interpreted the term 'profit' to mean

'a commercial transaction in which there is a consideration involved.'" *Id.* at 308 (quoting *King v.*

*Commonwealth*, 219 Va. 171, 174 (1978)). Thus, "[a] defendant charged with distribution who

defends on the ground of accommodation 'is required to produce some evidence which satisfies the

trier of the facts that his distribution was for accommodation.'" *Id.* (quoting *Stillwell*, 219 Va. at

225).

The record fails to support Johnson's assertion that he possessed the marijuana with intent to

distribute as an accommodation. He does not argue that there is any affirmative evidence that he

distributed marijuana as an accommodation, but rather, recycles the arguments he claims

demonstrated that he did not distribute marijuana in the first place. Specifically, he asserts that

> [f]or the reasons argued in Argument I [regarding Johnson's intent
> to distribute] above, even if the evidence is sufficient to prove that
> he had the intent to distribute marijuana and not merely use it
> himself, the deficiencies in proof of intent to distribute for profit,
> such as a lack of packaging, money, ledgers, or the conduct of
> sales, themselves established by a preponderance of the evidence
> that Johnson possessed it to share, and not as part of a commercial
> operation.

Although these "missing" items often are found in relation to drug distribution activities,

their absence in a particular case does not compel the conclusion that a defendant does not harbor an

intent to distribute or that any distribution is not part of a commercial enterprise. Much as the trial

court was free to weigh the absence of these particular pieces of potential evidence against the evidence that was introduced and conclude that Johnson harbored an intent to distribute marijuana, it was free to weigh the evidence and conclude that the evidence did not support his accommodation defense.

On these facts, the trial court did not err in finding that the evidence did not support Johnson's claim that he possessed the marijuana with the intent to distribute it only as an accommodation.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed*.